**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| SHEMAYAH BEN-ISRAEL, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO. 3:18-cv-1723 (VLB) |
| | : | |
| DIAZ, et al., | : | |
| Defendants. | : | September 27, 2019 |

**MEMORANDUM OF DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

The plaintiff, Shemayah Ben-Israel, commenced this civil rights action asserting claims for use of excessive force and deliberate indifference to safety. The remaining claim is for use of excessive force against Lieutenant Diaz. The parties have filed cross-motions for summary judgment. For the following reasons, plaintiff's motion is denied and Diaz's motion is granted.

**I. Standard of Review**

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P.; *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113-14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113-14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits

or on an affirmative defense ….”  *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  He cannot “‘rely on conclusory allegations or unsubstantiated speculation’ but ‘must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact.’”  *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 34 (2d Cir. 2015) (citation omitted).  To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor.  *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Although the court is required to read a self-represented “party’s papers liberally and interpret them to raise the strongest arguments that they suggest,” *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), “unsupported allegations do not create a material issue of fact” and do not overcome a properly supported motion for summary judgment.  *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

## II.  Facts[1]

---

[1] The facts are taken from the parties’ Local Rule 56(a) Statements and exhibits.

Plaintiff was confined at MacDougall-Walker Correctional Institution ("MacDougall") in early August 2016, at the time of the incident underlying this action.  Def.'s Local Rule 56(a)1 Statement, Doc. #27-5 ¶ 2.  In August 2016, Lieutenant Diaz was assigned to MacDougall as the 89 east sector supervisor.  *Id.* ¶¶ 3-4.  She was responsible for overseeing housing units N, O, P, Q, and R.  *Id.* ¶ 4.

On August 1, 2016, the unit manager of the N housing unit told Lieutenant Diaz that two inmates needed to be escorted to the restrictive housing unit ("RHU") because of safety and security concerns.  *Id.* ¶ 5.  Lieutenant Diaz oversaw the escorts.  The first inmate was placed in RHU cell 19 without incident.  *Id.* ¶ 6.

Lieutenant Diaz was temporarily relieved of duty during both escorts while the inmates were being strip-searched before placement in an RHU cell as departmental directives prohibit cross-gender strip searched absent extenuating circumstances.  *Id.* ¶ 7.

The only cell available for the second inmate was RHU cell 3, the cell in which plaintiff was confined without a cellmate.  *Id.* ¶ 8.  The two inmates did not have an active separation profile and neither was classified as a Security Risk Group member.  Thus, there was no reason for Lieutenant Diaz to believe that housing the two inmates together would pose a security risk for either inmate.  *Id.* ¶ 9.  Plaintiff admitted at his deposition that he did not know the other inmate and had no knowledge suggesting that the inmate posed a danger to him.  *Id.* ¶ 10.

The plaintiff has never been assaulted by another inmate while confined in a Connecticut correctional facility. *Id.* ¶ 11.

Plaintiff refused to accept a cellmate. *Id.* ¶ 12. Plaintiff did not tell staff that he had safety concerns about being housed with this inmate. *Id.* ¶ 13. Instead, he based his refusal on a threatening note he had received from an SRG member a week earlier. Pl.'s Decl., Doc. #22-1 at 2 ¶ 2. Lieutenant Wiggins told plaintiff that he would be placed on in-cell restraints if he refused a cellmate. Doc. #27-5 ¶ 14. Lieutenant Diaz agreed with this decision. *Id.* ¶ 15. Plaintiff continued to refuse a cellmate and was placed on in-cell restraints. Lieutenant Diaz oversaw the placement. *Id.* ¶ 16.

Department of Correction Administrative Directive 6.5 permits the use of in-cell restraints to ensure compliance with an order and to maintain order, safety, and security in the correctional facility. *Id.* ¶¶ 17, 20. The primary reason for plaintiff's placement on in-cell restraints was that he was being acutely disruptive and interfered with order, safety, and security by disrupting the operation of the RHU. *Id.* ¶ 18.

At that time, the addition of the two inmates made the RHU full. *Id.* ¶ 19. Because plaintiff refused to accept a cellmate, staff had to move him to RHU cell 9, a cell that is intended for use only by mental health patients on mental health or behavioral observation. The cell is supposed to remain empty if not used for this purpose. If a mental health inmate had been sent to RHU, another inmate would have to be released from RHU to accommodate the mental health inmate.

As the RHU is intended to house inmates whose continued presence in general population poses a serious threat to life, property, self, other inmates, and/or the security of the facility, this would disrupt operation of the facility. *Id.* ¶ 18.

In-cell restraints consist of wrist restraints, leg-irons, and a tether chain. Plaintiff's placement on in-cell restraints was without incident. *Id.* ¶ 21. A nurse checked the restraints to ensure proper spacing and circulation. No injuries were reported. *Id.* ¶ 22. After the placement was completed, Lieutenant Diaz left the RHU and returned to her assigned area. *Id.* ¶ 23. Plaintiff received a disciplinary report of interfering with safety and security. *Id.* ¶ 25.

The RHU staff was responsible for monitoring plaintiff and determining the length of his placement on in-cell restraints. *Id.* ¶ 26. The incident report shows that Lieutenant Wiggins checked plaintiff at 8:15 a.m. on August 2, 2016. When asked if he would comply with facility procedures and accept a cellmate, plaintiff refused. Lieutenant Wiggins decided to continue plaintiff's placement on in-cell restraints because of his noncompliance. *Id.* ¶ 27. Lieutenant Wiggins checked plaintiff a second time at 11:30 a.m. and observed that plaintiff continued his noncompliant behavior. *Id.* ¶ 28. Plaintiff was constantly kicking and banging on the cell door and yelling and screaming at staff. Doc. #27-2 at 27. Lieutenant Prior check plaintiff twice the following day, at 8:24 a.m. and 11:30 a.m. Doc. #27-5 ¶¶ 29-30.

On August 3, 2016, at 11:30 a.m., after speaking to plaintiff and RHU staff, Lieutenant Prior decided to remove plaintiff from in-cell restraints. Lieutenant

Diaz was not present so did not participate in that decision.  *Id.* ¶ 30.  Nor was she present when Lieutenants Wiggins and Prior checked on plaintiff during his placement.  *Id.* ¶ 32.  Reports indicate, however, that he was checked every fifteen minutes by RHU staff and regularly by medical staff.  *Id.* ¶ 32.  Plaintiff admitted that he suffered no injuries as a result of the placement on in-cell restraints.  *Id.* ¶ 33.

The Department of Correction administrative remedy procedure is set forth in Administrative Directive 9.6.  *Id.* ¶ 34.  An inmate must file a Level 1 grievance within thirty days from the date of the incident.  *Id.* ¶ 35.  If the Level 1 grievance is denied, the inmate can appeal the denial to Level 2.  *Id.* ¶ 36.

If an inmate filed a grievance concerning an incident at a correctional facility where he is no longer incarcerated, the grievance is forwarded to the facility where the incident occurred.  *Id.* ¶ 38.  Plaintiff was transferred from MacDougall to Cheshire Correctional Institution ("Cheshire") on August 3, 2016, the day he was released from placement on in-cell restraints.  *Id.* ¶ 37.  Thus, his grievance was returned to MacDougall for disposition.  *Id.* ¶ 38.

Counselor Bennett reviewed all non-health related grievances filed by inmates at MacDougall to determine whether plaintiff filed any grievances in 2016.  She also inspected the Grievance Log and the Return Without Disposition Grievance Log for grievances filed at MacDougall.  *Id.* ¶ 39.

Plaintiff filed a grievance regarding his placement on in-cell restraints after he was transferred to Cheshire.  *Id.* ¶ 40.  The grievance was rejected as untimely

filed.  *Id.* ¶ 41.  The grievance logbook shows that plaintiff never filed a Level 2 appeal.  *Id.* ¶ 42.

### III.  Discussion

Plaintiff moves for summary judgment on two grounds:  Lieutenant Diaz was not authorized to order his placement on in-cell restraints, and his placement violated departmental directives because in-cell restraints may be used only when an inmate is acutely disruptive and not for harassment or punishment. Lieutenant Diaz raises three grounds in her cross-motion for summary judgment: (1) plaintiff cannot establish an Eighth Amendment claim for use of excessive force, (2) plaintiff has not exhausted his administrative remedies, and (3) Lieutenant Diaz is protected by qualified immunity.

Defendant Diaz argues that plaintiff failed to exhaust his administrative remedies before filing suit.  The Prison Litigation Reform Act requires prisoners to exhaust administrative remedies before filing a federal lawsuit relating to prison conditions.  42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").  This exhaustion requirement applies to all claims regarding "prison life, whether they involve general circumstances or particular episodes."  *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002).

Exhaustion of all available administrative remedies must occur regardless

of whether the administrative procedures provide the relief that the inmate seeks. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). Furthermore, prisoners must comply with all procedural rules regarding the grievance process prior to commencing an action in federal court. *See Woodford v. Ngo*, 548 U.S. 81, 90-91, 93 (2006) (proper exhaustion "means using all steps that the agency holds out ... (so that the agency addresses the issues on the merits) ... [and] demands compliance with agency deadlines and other critical procedural rules"). Special circumstances will not relieve an inmate of his or her obligation to adhere to the exhaustion requirement. An inmate's failure to exhaust administrative remedies is only excusable if the remedies are in fact unavailable. *See Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1858 (2016).

Exhaustion of administrative remedies is an affirmative defense. Thus, the defendant bears the burden of proof. *See McCoy v. Goord*, 255 F. Supp. 2d 233, 247-48 (S.D.N.Y. 2003) (citing *Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999)). Defendant Diaz contends that plaintiff did not timely file his Level 1 grievance and did not appeal the rejection of the grievance to Level 2. As support, she submits a copy of the receipt issued to plaintiff when he filed the Level 1 grievance at Cheshire. Although the grievance is dated August 20, 2016, the receipt is dated September 7, 2016. *See* Doc. #27-3 at 23-25.

The directive requires that grievances be filed within thirty days of the date of the incident. *See* Directive 9.6(6)(C), Doc. #27-3 at 11 ("grievance must be filed within 30 calendar days of the occurrence or discovery of the cause of the

grievance).  As plaintiff was released from in-cell restraints on August 3, 2016, he appears to have filed his grievance at least five days too late.  Even if the Court were to consider the date on the grievance as creating a genuine issue of fact regarding the date of filing, Defendant Diaz's motion for summary judgment still should be granted on this ground.

A grievance that is denied or rejected may be appealed to the next level. Directive 9.6(6)(G), *id.*  The rejection notice did not indicate that plaintiff had completed the exhaustion process.  *Id.* at 25.  Neither the box indicating that administrative remedies have been exhausted nor the space identifying where to appeal were checked.  *Id.*  Thus, under the directive, plaintiff was able to appeal the rejection to Level 2 and was required to do so to complete the exhaustion process.  *See Gibson v. Goord*, 280 F.3d 221, 223 (2d Cir. 2002) (affirming dismissal of prisoner complaint on several grounds including failure to exhaust administrative remedies where prisoner had filed Level 1 grievance but had not appealed denial to Level 2); *Mims v. Department of Corr.*, No. 3:02CV250(WIG), 2005 WL 2406005, at *3 (D. Conn. Sept. 29, 2005) ("although Plaintiff filed numerous grievances, he failed to appeal the denial of any of these grievances beyond level one and, thus, failed to exhaust available administrative remedies as required by the PLRA before filing this suit").

Plaintiff failed to fully exhaust his administrative remedies before commencing this action.  Defendant Diaz's cross-motion for summary judgment is granted on this ground.  The Court need not address the defendant's other

arguments or the arguments advanced by plaintiff as these arguments focus on the merits of plaintiff's claim.

## IV.  Conclusion

Defendant Diaz's cross-motion for summary judgment [Doc. #27] is GRANTED on the ground that plaintiff failed to properly exhaust his administrative remedies before commencing this action.  Plaintiff's motion for summary judgment [Doc. #22] is DENIED.

The Clerk is directed to enter judgment and close this case.

SO ORDERED this   27 th day of September 2019 at Hartford, Connecticut.


_____/s/_____

**Vanessa L. Bryant**
**United States District Judge**